# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ***SHIRLEY ANN SUTTER*** and ***GLEN W. SUTTER,*** **Wife and Husband,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 3:20-cv-00182** |
| | : | **(Hon. Malachy E. Mannion)** |
| ***CASCADES TISSUE GROUP – PENNSYLVANIA, INC., A DIVISION OF CASCADES HOLDINGS US INC., Et Al.,*** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | **ELECTRONICALLY FILED** |

## PLAINTIFFS' OMNIBUS SUMMARY OF
## <u>MATERIAL FACTS RE MOTIONS *IN LIMINE*</u>

SHEIN LAW CENTER, LTD.
By:    Benjamin P. Shein, Esquire
       Pennsylvania I.D. No. 42867
       John P. Kopesky, Esquire
       Pennsylvania I.D. No. 30112
       Shein Law Center, Ltd.
       Twenty-First Floor
       121 South Broad Street
       215.735.6677
       bshein@sheinlaw.com
       jkopesky@sheinlaw.com

Daniel T. Brier, Esquire
Pennsylvania I.D. No. 53248
Myers, Brier & Kelly, LLP
Suite 200
425 Biden Street
Scranton, Pennsylvania 18503
570.342.6100
dbrier@mbklaw.com

Attorneys for Plaintiffs
Shirley Ann Sutter and Glen
W. Sutter, Wife and Husband

Dated:  December 15, 2021

Plaintiffs Shirley Ann Sutter and Glen W. Sutter, Wife and Husband, acting by and through their undersigned counsel, hereby submit, pursuant to Paragraph No. 2 of the Court's October 13, 2021 Order (Document 45), their Omnibus Summary of Material Facts re Motions *in Limine.*

## SUMMARY

Plaintiff Shirley Ann Sutter was diagnosed with malignant mesothelioma in April 2017.  Ms. Sutter's mesothelioma was caused by her occupational exposure to asbestos.  More specifically, Ms. Sutter was exposed to asbestos as a result of her employment at a paper fiber processing plant owned and operated by defendant Cascades Tissue Group – Pennsylvania, Inc., a Division of Cascades Holding US Inc. ("Cascades"),[1] in Ransom, Pennsylvania.  At Cascades, Ms. Sutter was

---

[1]     "Cascades," the defendant herein, is self-identified as "Cascades Tissue Group – Pennsylvania, Inc., a division of Cascades Holding US Inc."  Cascades is identified in Plaintiffs' Complaint as follows:

a.     CASCADES TISSUE GROUP – PENNSYLVANIA, INC., Individually and as Successor-in-Interest to and/or Parent of and/or Responsible Party for Pope & Talbot Wis., Inc. and/or Plainwell, Inc.;

b.     CASCADES TISSUE, LLC, Individually and as Successor-in-Interest to and/or Parent of and/or Responsible Party for Pope & Talbot Wis., Inc. and/or Plainwell, Inc.; AND

c.     CASCADES HOLDING US, INC., Individually and as Successor-in-Interest to and/or Parent of and/or Responsible Party for Pope & Talbot Wis., Inc. and/or Plainwell, Inc.

exposed to tanks, vessels, overhead pipes, and other equipment that were present throughout the plant.  The tanks, vessels, pipes, and other equipment were covered with asbestos insulation materials.  As Ms. Sutter and others walked by, they came in direct contact with the asbestos insulation, frequently causing it to tear and flake off and thus release asbestos fibers into the air.  In addition, during plant operations, the overhead pipes and other equipment vibrated, causing the asbestos insulation materials, which were deteriorated, to release asbestos-laden dust into the air.  Finally, workers performing renovations in the plant removed or otherwise disturbed asbestos insulation materials, creating asbestos-laden dust and debris, while Ms. Sutter was working in the vicinity.  As a Cascades employee, Ms. Sutter was thus exposed to, and breathed in, airborne asbestos fibers and, as a result, Ms. Sutter developed – and will ultimately die from – asbestos-related malignant mesothelioma.

Plaintiffs' claims against Cascades are based on Ms. Sutter's status as an employee of Cascades and, as such, those claims are brought pursuant to the Pennsylvania Supreme Court's decision in *Tooey v. AK Steel Corporation,* 81 A.3d 851 (Pa. 2013).

## RELEVANT FACTUAL BACKGROUND[2]

Shirley Sutter was employed at a paper manufacturing plant in Ransom,
Pennsylvania beginning in 1998.  Ms. Sutter worked at what was known as the
"poly plant" or the "fiber plant."  The poly plant, which was still in operation until
it was closed by Cascades in December 2020, converted large bales of paper that
had been recycled into pulp.  The pulp was then transferred to the adjacent paper
mill where it was used to make large rolls of new recycled paper (*i.e.,* parent rolls).
The parent rolls were then sold to other paper companies or were shipped to a
related plant in Pittston, Pennsylvania (also now closed by Cascades as of
December 2020) where the parent rolls were converted into household paper
products such as toilet tissue, napkins, and paper towels.

Ms. Sutter began working in the poly plant in 1998.  When Ms. Sutter began
working at the plant, the poly plant, along with the adjacent paper mill and the
Pittston, Pennsylvania plant were all owned and operated by Pope & Talbot-

---

[2]     Ms. Sutter was deposed on February 26, 2019.  During her deposition,
Ms. Sutter testified in detail regarding her exposure to asbestos as a
result of her employment at the Cascades paper fiber processing plant
in Ransom, Pennsylvania.   This recitation of the factual basis for
Plaintiffs' claims against Cascades is based primarily on Ms. Sutter's
sworn deposition testimony.

Wisconsin, Inc. ("Pope & Talbot").[3]  Pope & Talbot owned and operated the plants until they were purchased by Plainwell, Inc.  Plainwell, Inc. then operated the three plants until they were purchased by Cascades in September 2001.[4]  Thereafter, Cascades owned and operated the plants, and Cascades was still the owner/operator of the plants when Ms. Sutter stopped working because of her mesothelioma in June 2017.

Throughout her career at the Ransom, Pennsylvania poly plant, Ms. Sutter was a full-time employee, working twelve-hour shifts.  Ms. Sutter alternated between working three twelve-hour shifts one week and four twelve-hour shifts the next week.  Ms. Sutter also regularly worked overtime.

In 1999, Ms. Sutter was given the job of "Temporary Utility Worker" at the poly plant.  As explained by Ms. Sutter:

---

[3]     Pope & Talbot is bankrupt, is no longer an operating company, and Plaintiffs were unable to effectuate service on Pope & Talbot in this case.

[4]     Plainwell is bankrupt, is no longer an operating company, and Plaintiffs were unable to effectuate service on Plainwell in this case. Cascades purchased the Ransom, Pennsylvania plant through an asset sale approved by the Bankruptcy Court overseeing the Plainwell bankruptcy proceeding.

I worked alongside the operators to help them make pulpers.[5]  When
we were done with the pulpers, I would wrap the wires up and throw
them into a hopper.  I would also take rakes or whatever was needed
to sweep around each pulper after we were done.  I would take air
hoses and blow off the pulper areas and the pipes that was above the
pulpers.  I would make sure that they had their chemicals.

I was all around utility.  Whatever they needed is what I did.

As a Temporary Utility Worker, Ms. Sutter worked throughout the poly plant.

Ms. Sutter was exposed to asbestos while employed as a Temporary Utility
Worker at the poly plant.  More specifically, Ms. Sutter was exposed to dust from
old, cracked and deteriorated asbestos insulation that covered pipes and tanks in
the poly plant.  Importantly, Ms. Sutter knew that the insulation contained asbestos
because, as a result of a survey of the Ransom plant that had been performed by
Pope & Talbot in 1990, signs were posted on the insulation identifying it as
asbestos-containing.  When the plant was in operation, the pipes and tanks
vibrated, creating visible dust from the asbestos insulation.  The air was "very
dusty," and Ms. Sutter was exposed to – and breathed in – the dust from the
asbestos insulation.

---

[5]     For clarification purposes, a "pulper" is the machine, similar to a large
mixing bowl, that converts recycled paper into pulp.  The poly plant in
Ransom, Pennsylvania was equipped with a fourteen-foot (*i.e.,* both
fourteen feet tall and fourteen feet wide), a fifteen-foot and an
eighteen-foot pulper.  Making a "pulper" means to make a batch of
pulp.

In addition, some of the asbestos-covered pipes were closer to ground level. Ms. Sutter walked past these asbestos-covered pipes, which were located in a narrow space, on a daily basis, and when she did so, she brushed up against them, creating visible dust from the asbestos insulation. Ms. Sutter was exposed to – and breathed in – the asbestos-laden dust from these asbestos-covered pipes.

Finally, at the end of her shift, Ms. Sutter did clean-up work, using compressed air to blow off debris from the asbestos-covered pipes and tanks. When Ms. Sutter cleaned up using compressed air, there was visible dust in the air from the deteriorated asbestos insulation. Ms. Sutter also used a rake and a shovel to gather debris, creating visible dust. Ms. Sutter was exposed to – and breathed in – the dust that was created from her clean-up work, including dust from the asbestos insulation on the pipes and tanks.

Working as a Temporary Utility Worker, Ms. Sutter was exposed to asbestos – as described – on a daily basis.

Ms. Sutter was employed as a Temporary Utility Worker in the poly plant for approximately three years (1998-2001). In May 2001, Ms. Sutter became a "Permanent Utility Worker." As a Permanent Utility Worker, Ms. Sutter's duties and responsibilities were identical to her duties and responsibilities as a Temporary Utility Worker. Accordingly, as a Permanent Utility Worker, Ms. Sutter was

exposed to asbestos on a daily basis in exactly the same ways that she had been exposed to asbestos as a Temporary Utility Worker.

Ms. Sutter worked as a Permanent Utility Worker for four months – until September 2001 – when Cascades purchased the poly plant, paper mill and Pittston manufacturing plant and "bumped" Ms. Sutter back to Temporary Utility Worker. Working again as a Temporary Utility Worker after Cascades became the owner/operator of the poly plant, Ms. Sutter's duties and responsibilities were identical to her previous duties and responsibilities as a Temporary Utility Worker and, later, as a Permanent Utility Worker.  Accordingly, as a Temporary Utility Worker after September 2001, Ms. Sutter was exposed to asbestos on a daily basis in exactly the same ways that she had been exposed to asbestos as a Temporary Utility Worker and as a Permanent Utility Worker prior to Cascades becoming the owner/operator of the poly plant in September 2001.

Further, Cascades began renovating the poly plant beginning in 2002, and, in addition to her daily exposures to asbestos as a Temporary Utility Worker, Ms. Sutter was also exposed to asbestos as a result of the renovation work performed by Cascades.  The entire poly plant was renovated, and the renovation work was done by Cascades employees from Canada.  As explained by Ms. Sutter:  "They came in and they ripped out equipment that was covered with asbestos insulation.

They tore down the pipes that had asbestos insulation on it."  Cascades then installed new equipment and piping to automate and modernize the plant.

Ms. Sutter was exposed to asbestos when the Cascades employees removed piping and equipment that was insulated with asbestos.  "When they came in and they start ripping out the pipes covered with the asbestos insulation, you could see the dust in the air when they removed the equipment that had asbestos insulation around it."  When the Cascades employees were removing asbestos insulation on pipes and tanks, Ms. Sutter was working "[r]ight in the same area."  The Cascades employees took no steps to isolate the areas where they were removing asbestos insulation to prevent plant employees like Ms. Sutter from entering the area and being exposed to asbestos.  When the Cascades employees were removing asbestos insulation from the pipes and tanks in the poly plant, the air was "[v]ery dusty. You could see it."  Ms. Sutter was exposed to – and breathed in – the dust that was created by the Cascades employees when they removed pipes and tanks with asbestos insulation.  Ms. Sutter was exposed to asbestos as a result of this renovation work on a daily basis from 2002 until the renovations were completed in 2006.  No renovation work was done after 2006.[6]

---

[6]    Ms. Sutter's testimony regarding the renovations that were performed by Cascades from 2002 through 2006, including the removal of asbestos-insulated piping, was confirmed in the deposition testimony

As a result of the modernization of the plant, the number of Cascades employees working at the plant was significantly reduced, and Ms. Sutter became a "First Assistant Operator."  As a First Assistant Operator, Ms. Sutter explained:

> I maintained the equipment.  I monitored the equipment.  Our – our – we were no longer individually making a pulper.  It was now automated.  So we had computers set up in an office, and I was able to watch everything that was going on by looking at the computers.
>
> We still made lines, though.  We still had to put the bales on the lines.  So we had to go out and cut wires, and the wires were coiled. We still had to change chemicals.  We still had to do the same thing. And I still had to do clean-up.  I mean, now we lost a utility and I became the utility because I was the bottom job.

Working as a First Assistant Operator in the now renovated poly plant, Ms. Sutter spent less time on the floor and more time monitoring equipment on computers.

As a result of the renovation of the poly plant, which was completed in 2006, Ms. Sutter was not exposed to asbestos as a Cascades employee after 2006. As part of the poly plant renovations, piping and equipment that had asbestos insulation was either removed or "covered over."  Ms. Sutter explained that she was not exposed to asbestos after 2006 "[b]ecause the renovation work was

---

of two of Ms. Sutter's co-workers – William Powell and Harry David. Messrs. Powell and David were deposed by Plaintiffs on July 16, 2020.

complete, and they [Cascades] told us that anything that was left with asbestos insulation on it was covered over."[7]

Respectfully submitted,

SHEIN LAW CENTER, LTD.

By:    *Benjamin P. Shein*

Benjamin P. Shein, Esquire
Pennsylvania I.D. No. 42867
John P. Kopesky, Esquire
Pennsylvania I.D. No. 30112
Shein Law Center, Ltd.
Twenty-First Floor
121 South Broad Street
215.735.6677
bshein@sheinlaw.com
jkopesky@sheinlaw.com

Daniel T. Brier, Esquire
Pennsylvania I.D. No. 53248
Myers, Brier & Kelly, LLP
Suite 200
425 Biden Street
Scranton, Pennsylvania 18503
570.342.6100
dbrier@mbklaw.com

Attorneys for Plaintiffs
    Shirley Ann Sutter and Glen
    W. Sutter, Wife and Husband

Dated:   December 15, 2021

---

[7]    There is no evidence that Ms. Sutter was ever exposed to asbestos – either occupationally or otherwise – at any other point during her life. Ms. Sutter's exposure to asbestos at Cascades is her only known exposure to asbestos.

## CERTIFICATION OF SERVICE

It is hereby certified by the undersigned member of the Bar of this Court that one copy of the foregoing Plaintiffs' Omnibus Summary of Material Facts re Motions *in Limine* has been served upon each of the counsel whose name and address is set forth below by way of electronic service on Wednesday, the 15th day of December 2021:

JOHN P. McSHEA, ESQUIRE
McShea Law Firm
Suite 4000 – West Tower
Centre Square
1500 Market Street
Philadelphia, Pennsylvania 19102-2100

Electronic Mail:  jmcshea@mcshealawfirm.com

JOHN M. FITZPATRICK, ESQUIRE
Wheeler, Trigg & O'Donnell
Suite 4500
370 Seventeenth Street
Denver, Colorado 80202

Electronic Mail:  Fitzpatrick@wtotrial.com

Attorneys for Defendant
Cascades Tissue Group – Pennsylvania, Inc.,
a Division of Cascades Holding US Inc.

Dated:   December 15, 2021

SHEIN LAW CENTER, LTD.

By: *John P. Kopesky*

    John P. Kopesky, Esquire
    Pennsylvania I.D. No. 30112
    Shein Law Center, Ltd.
    Twenty-First Floor
    121 South Broad Street
    Philadelphia, Pennsylvania 19107
    215.735.6677
    jkopesky@sheinlaw.com

    Attorney for Plaintiffs
      Shirley Ann Sutter and Glen
      W. Sutter, Wife and Husband